Clarence E. **COPELAND**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

Nos. 18496, 18497.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 21, 1964.

Decided Dec. 31, 1964.

Petition for Rehearing en Banc
Denied Feb. 26, 1965.

Bazelon, Chief Judge, dissented in part.

Mr. Thomas R. Jones (appointed by the District Court), Washington, D. C., for appellant.

Mr. Martin R. Hoffmann, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Barry Sidman, Asst. U. S. Attys., were on the brief, for appellee.

Mr. Anthony A. Lapham, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.

BURGER, Circuit Judge:

Two separate appeals which were consolidated for the convenience of the court are before us. The two appeals arise out of separate, unrelated criminal acts, separate indictments and separate trials.

No. 18496 involved armed robbery of a Western Union Telegraph Office at 1354 Connecticut Avenue on October 5, 1963; No. 18497 involved armed robbery, assault with a dangerous weapon and possession of unlicensed firearms, all in connection with the robbery of a paint store on August 15, 1963. Appellant was not arrested or apprehended for the August robbery of the paint store until after his arrest for the Western Union robbery in October. The paint store robbery was carried out with an accomplice and involved the shooting and wounding of a store employee.

Before discussing these cases, the circumstances of appellant's arrest for the Western Union robbery should be set forth, since the arrest for the paint store robbery grew out of the arrest in the second robbery.

*No. 18496—Western Union Robbery*

Appellant was arrested shortly after midnight, within moments after the robbery; immediately following his arrest, appellant was taken by police to the Western Union Office where he was positively identified by one of the robbery victims. Appellant was then taken to the Third Precinct Police Station and

detained but not questioned. He arrived at the police station between midnight and 1 A.M. Arrangements were made to have him presented for preliminary hearing before the United States Commissioner later that morning during regular business hours. However, before that preliminary hearing, which was set for 9:30 A.M., appellant was placed in the police lineup where Detective Evanoff, after observing him, concluded, for reasons not revealed by the record, that appellant might be implicated in the paint store robbery of the previous August. Detective Evanoff, who then questioned appellant in the precinct station, testified that his interrogation of appellant did not interfere with appellant's being presented to the Commissioner, since appellant's preliminary hearing was scheduled at 9:30. At approximately 9 A.M., appellant confessed to Evanoff that he had robbed the paint store. Meanwhile, police had arranged to have one of the paint store robbery victims, Mr. Kuck, come to the police station.[1] Kuck arrived there at about 9:20 and as he walked into the police station, appellant stood up, "put out his hand and apologized * * *" to Kuck for the shooting during the paint store robbery. The facts recited up to this point in relation to No. 18496 bear upon the treatment later to follow of the appeal in No. 18497.

On trial the government evidence in connection with the Western Union robbery disclosed that two men entered the office shortly after midnight; one of them, later identified by an employee as the appellant, carried a gun and forced an employee to open the safe from which the second man removed the cash. Police were promptly called and appellant was apprehended near the Western Union Office, partly because a third accomplice, waiting in a "get away" car, had driven off without him. Before his arrest, appellant attempted to dispose of a pistol but the pistol was recovered by police and was identified by the victim as of the type used in the robbery. The victim was unable to give any adequate description of the second robber.

■■ Appellant's only claim of error in his trial for the Western Union robbery is the court's failure to exclude witnesses from the courtroom before trial, when a co-defendant, Henry, entered a guilty plea. Henry was the driver of the "get away" car during the holdup. The information elicited by the court in the course of exploring Henry's guilty plea was only remotely related to the testimony later offered at appellant's trial by witnesses who heard Henry's plea. Moreover, Henry did not specifically implicate appellant in the robbery. Therefore, it is unlikely that the testimony of any of these witnesses was influenced by reason of what they heard. They were, of course, subject to cross-examination on all of their testimony. We are unable to accept the contention that there was any prejudice by reason of the unchallenged presence of these witnesses in the courtroom during Henry's plea of guilty. Moreover this contention would have no greater merit had appellant made timely objection to exclude the witnesses, since such a motion is addressed to the sound discretion of the District Judge. Williamson v. United States, 310 F.2d 192, 198 (9th Cir. 1962); Moses v. United States, 297 F. 2d 621, 623 (8th Cir. 1961); United States v. Cephas, 263 F.2d 518 (7th Cir. 1959).

### No. 18497—Paint Store Robbery

The prosecution's evidence in connection with the paint store robbery included the testimony of the complaining witness Kuck, who identified appellant. This identification was based upon face-to-face contact with appellant during which the witness observed, among other things, distinctively decayed front teeth. The shell casing from the robber's pistol was recovered from the paint store and the Federal Bureau of Investigation expert identified the shell casing as having

---

1. Evanoff testified that he asked Kuck to come to the police station after he saw appellant in the lineup but before he questioned him.

been fired from the weapon dropped by the appellant at the time of his arrest at the scene of the Western Union robbery approximately two months later. Apart from his courtroom identification of appellant, the complaining witness Kuck testified that he had seen appellant at the Robbery Squad office at which time, according to Kuck, the appellant "put out his hand and apologized for shooting at me."

Appellant contends that the delay between his arrest shortly after midnight for the Western Union robbery and the preliminary hearing during regular business hours later that morning violated Rule 5(a) of the Federal Rules of Criminal Procedure, and that the apology to the complaining witness Kuck was inadmissible under Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964 (1964).

In order to exclude this apology under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), we must find first that there was some illegal police action or "primary illegality" and second that the challenged apology is the "fruit" of that "poisonous tree."

■ In determining whether there is a "primary illegality" of which appellant's apology might be deemed the fruit, we should not lose sight of the fact that the Supreme Court in *Mallory* sought to implement the congressional mandate in Rule 5(a) not by an artificial, abstract analysis but rather by a careful examination of police conduct. This approach best serves the congressional purpose to foreclose opportunity for oppressive police methods without impairing essential and reasonable police procedures; moreover, this approach precludes facile resort by appellate courts to per se rules turning, for example, on the precise amount of elapsed time between arrest and the making of a challenged pre-hearing statement, when time is but one factor, albeit important. This approach also

reduces the importance of the possibly fortuitous circumstance of the place where the accused makes the statement, e. g., whether in a police car, at the scene or at the station. As *Wong Sun* emphasizes, 371 U.S. at 487–488, 83 S.Ct. at 417, our concern should rather be with the existence vel non of deliberately exploitative conduct by the police in relation to the challenged statement.

■ Appellant's arrest and detention overnight for the Western Union robbery were abundantly supported by probable cause and were lawful; no "primary illegality" can be found in them. Primary illegality, if any is to be found here, must then be spelled out either in appellant's being placed in a line-up or in his being interrogated. In Fredricksen v. United States, 105 U.S.App.D.C. 262, 266 F.2d 463 (1959), this court dealt with a statement by a defendant made during a line-up but not elicited by any police questioning and held its admission not to violate *Mallory*. No case has held that a person under detention may not be observed by police officers, whose business it is to carry in their minds, as well as in their records, descriptions of persons reported, suspected or actually involved in criminal activity. It would be ritualistic formalism to say that an arrested person may be viewed in a cell by officers but that he may not be placed in a line-up for the same purpose. This reasoning is persuasive that no "primary illegality" can be said to inhere in the line-up technique, and we hold that it was permissible. We thus find it unnecessary to consider whether the apology was the "fruit" of the line-up.

■ We come finally to the interrogation: if, as we assume, Evanoff's interrogation following the line-up was a "primary illegality," it becomes necessary to consider whether the apology was the fruit of that questioning. In Wong Sun v. United States, 371 U.S. at 487–488, 83 S.Ct. at 417, the Supreme Court rejected a "but for" concept as defining the scope

of the "fruit" doctrine and suggested the appropriate criteria:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

To exclude the apology under this holding we would be required to find (a) that it would not have been made but for the interrogation and (b) that it was a result—a fruit—of deliberate exploitation by police of interrogation prior to preliminary hearing. We must reject this contention.

Here not even a "but for" relationship is shown to exist between the interrogation and the apology. The witness Kuck had been summoned before any interrogation took place and would have arrived at the police station regardless of events occurring during the period of his transit. And appellant would still have been present on Kuck's arrival absent any interrogation, since it was not yet time for his scheduled preliminary hearing. We can only speculate whether appellant would have apologized to Kuck absent prior interrogation by Evanoff and confession of the crime. Whatever the force to the "cat-out-of-the-bag" argument [2] in determining a nexus between two successive confessions to police, it would seem to have none as to a spontaneous, unsolicited and unexpected comment addressed only to a victim. An apology to a private citizen is a different breed of "cat" from the kind involved in a statement to police.

Even if a "but for" relationship between the interrogation and the apology is assumed, however, the element of deliberate exploitation required by *Wong Sun* is absent. Kuck was not used as a lever by the police, as the complaining witness was thought to have been in *Ricks v. United States, supra,* where the court found a definite connection between the interrogation and the apology to the victim, who was present throughout the questioning.[3]

2. See, *e.g.,* United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947).

3. The dissent relies on the exclusion of a second statement in the *Ricks* case, and in so doing fails to mention that the incriminating statement there was not an apology and was not addressed to a victim. It was rather a simple factual observation addressed by the accused to a witness. Unless we are shown otherwise—and there is nothing in the present record which even tends to make such a showing—we are not prepared to find that appellant's apology was anything but a gratuitous expression of remorse freely given. As such, it was both more personal and independent an act than the statement excluded by *Ricks* upon which the dissent relies.

The spontaneous character and independent quality of appellant's apology in this case are shown by the fact that Copeland affirmatively approached his erstwhile victim and addressed him, as shown by Kuck's testimony: "Just as I approached the rear of the office * * * Mr. Copeland put out his hand and apologized for shooting at me. He said he was shook." These circumstances are readily distinguishable both from Ricks' incriminating apology, with which we have dealt in the text of this opinion, and from the other statement excluded in *Ricks.* We note in passing, however, that the *Ricks* opinion failed to discuss or apply the criteria enunciated in *Wong Sun;* we feel that while those criteria might well have required exclusion of the apology in *Ricks,* they might well have allowed Ricks' second statement to stand.

Concerning the insubstantiality of the relationship between the police questioning and the apology in the present case, cf. Edwards v. United States, 117 U.S. App.D.C. 383, 385, 330 F.2d 849, 851 (1964); Smith v. United States, 117 U.S. App.D.C. 1, 324 F.2d 879 (1963), cert. denied, 377 U.S. 954, 84 S.Ct. 1632, 12 L.Ed.2d 498 (1964); Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d

The dissenting opinion is of the view that we need not inquire into the existence of any "primary illegality," since we find the apology independent of any illegality. This seems to us to put the cart before the horse; before we look for fruit we must find a poisonous tree. Moreover, to say only that we see no fruit here would be to evade comment on a question concerning a procedure regularly employed by police. We do not normally shrink from deciding questions properly before us and we should not do so here, especially when considerations of sound judicial administration compel us to recognize that the police and the other courts of this jurisdiction, who must depend on our holdings for guidance, are aware that we have not found line-up procedures violative of statutes or the Constitution. See Fredricksen v. United States, *supra*. Our view that we must look for a primary illegality before considering whether such an illegality has been exploited within the meaning of *Wong Sun* seems to us the sound approach and is not rendered dictum by a dissenting view that we should attack the problem from another angle.

We have considered other contentions made by appellant and find no basis for reversal.

Affirmed.

BAZELON, Chief Judge (concurring in part and dissenting in part):

Appellant was arrested just past midnight, October 5, 1963, moments after a nearby Western Union office had been robbed. The arresting officer at once took appellant to the office where appellant was positively identified by one of the robbery victims. Appellant was then taken to the Third Precinct Police Station. "The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible * * *." Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L. Ed.2d 1479 (1957). But appellant was

not taken before a committing magistrate until about 11:30 a. m., more than eleven hours after his arrest; earlier, at 8:30 a. m., appellant was placed in a police line-up, where Detective Evanoff saw him. Evanoff took appellant from the line-up because he suspected that appellant might be implicated in a paint store robbery which had taken place a month earlier. Evanoff questioned appellant from about 8:45 to 9:30. At about 9:00, appellant confessed to Evanoff that he had robbed the paint store. Appellant remained at Evanoff's desk while the latter transcribed the confession. At about 9:20, Mr. Kuck, the paint store robbery victim, arrived at the police station in response to a telephone call from Evanoff. Appellant had been told by Evanoff that Kuck was coming to the station, and when Kuck did arrive appellant recognized him. According to Evanoff's testimony, "The defendant said, There is the man now. I turned around and there was Mr. Kuck * * *. I then motioned Mr. Kuck forward and the defendant said he would like to talk to him and I allowed him to talk to Mr. Kuck." As Kuck walked toward Evanoff's desk, appellant stood and "put out his hand and apologized * * *" for shooting during the paint store robbery.

The confession to Evanoff was obtained in violation of Rule 5(a), FED.R.CRIM.P. Detective Evanoff testified that his questioning of appellant did not "interfere with [appellant's] progress" in being presented to a Commissioner since appellant was not scheduled to be arraigned until 9:30. But, whether or not Evanoff's questioning took place during "unnecessary delay" in taking appellant before a magistrate, "[t]here always remains the question whether the time was utilized to obtain a confession by secret police interrogation after arrest and prior to a magistrate's hearing. For a confession so obtained * * * is not admissible under *Mallory*." Spriggs v. United States, 118 U.S.App.D.C. 248, 251, 335 F.2d 283, 286 (1964).

723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961); Bynum v.

United States, 107 U.S.App.D.C. 109, 274 F.2d 767 (1961).

The Government did not offer in evidence the confession to Evanoff. Testimony was admitted, however, regarding appellant's apology to Kuck. The court assumes *arguendo* that the confession was inadmissible but holds that the apology was sufficiently distinguishable to be free of any "taint of primary illegality." I disagree. In determining that appellant's apology was not the product of police "exploitation" the court has ignored the possible effects on appellant of his over-night imprisonment, the morning line-up, the questioning by Evanoff and the fact that such questioning produced a confession moments before the apology to Kuck. The court also disregards the fact that no event intervened—no warning by a judicial officer, no advice of counsel, not even "time for deliberate reflection" [1]—between appellant's confession to Evanoff and apology to Kuck. We stated in Spriggs v. United States, "In the varying circumstances affecting different persons, with differences in their experience, education and other individual attributes, it is impossible to measure accurately the pressures in a Police Station upon prisoners under secret interrogation without counsel, relative or friend." 118 U.S.App.D.C. at 250, 335 F.2d at 285. The confession to Evanoff and the apology to Kuck "were simply parts of one continuous process." Leyra v. Denno, 347 U.S. 556, 561, 74 S.Ct. 716, 719, 98 L.Ed. 948 (1954). To admit testimony regarding the apology "obtained * * * so soon after the illegally procured and inadmissible confessions" would defeat the purpose of *Mallory*. Killough v. United States, 114 U.S.App. D.C. 305, 308, 315 F.2d 241, 244 (1962) (en banc).[2]

The court's holding is inconsistent with Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964 (1964). In that case, defendant had been in police custody for three hours, had admitted one offense and apologized to the victim, and had been told by police that they had evidence incriminating him in a second offense so that he "might as well tell the truth." To this injunction "Ricks said nothing, but a few moments later he passed [the second victim's] son-in-law in the corridor and said, 'You're the man that chased me out of the house when the woman on the second floor screamed.'" 118 U.S. App.D.C. at 218, 334 F.2d at 966. This statement as well as the prior confession and apology were excluded on *Mallory* grounds. The detention, confession and confrontation with a victim in *Ricks* closely parallel the circumstances here. The apology to Kuck is no more "a spontaneous, unsolicited and unexpected comment addressed only to a victim"—as characterized by the majority—than the excluded statement in *Ricks*.[3]

I concur in the affirmance of No. 18496 involving the Western Union robbery.

1. Jackson v. United States, 106 U.S.App. D.C. 396, 398, 273 F.2d 521, 523 (1959). See Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335, cert. denied, 364 U.S. 863, 81 S.Ct. 106, 5 L. Ed.2d 86 (1960); Killough v. United States, 114 U.S.App.D.C. 305, 315 F.2d 241 (1962) (en banc).

2. The court suggests that apologies reaffirming inadmissible confessions should be governed by standards different from —and apparently more permissive than— those applying to reaffirming confessions. I see no meaningful distinction which would justify different standards.

3. The court holds that the admissibility of the apology does not depend on the legality of the questioning. Since the questioning was so immediately connected with the line-up, it would follow that the admissibility of the apology also would not depend on the legality of the line-up. Thus the court's consideration of the line-up is unnecessary and its decision rests solely on the ground that the apology was a "spontaneous, unsolicited and unexpected comment addressed only to a victim."