Anthony **WILLIAMS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18928.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 5, 1965.

Decided March 18, 1965.

Petition for Rehearing En Banc and Petition for Rehearing before the Division Denied May 17, 1965.

Mr. Bruce E. Clubb (appointed by this court), Washington, D. C., with whom

Mr. Sheldon I. Cohen, Washington, D. C., was on the brief, for appellant.

Mr. John R. Kramer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and John A. Terry, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, DANAHER and BURGER, Circuit Judges.

PER CURIAM:

The appeal is from the conviction of appellant of robbery, defined in 22 D.C. Code § 2901 and of assault with a dangerous weapon in violation of 22 D.C. Code § 502. At the trial defendant was identified by three witnesses as the person who committed the robbery and assault. His counsel appointed by this court, however, strongly contends on the appeal that the trial court was without jurisdiction to enter judgments of conviction because the defendant was denied his constitutional right to the assistance of counsel granted by the Sixth Amendment to the Constitution. The evidence admitted at the trial and associated with his contention was to the effect that the identifying witnesses had previously identified defendant in a police lineup held shortly after the commission of the crimes and when appellant, the accused, was without counsel.

The case does not resemble factually any recent decision of the Supreme Court in which a conviction has been held invalid due to denial of the Sixth Amendment right to counsel, although the lack of such assistance prior to trial has been held fatal to convictions in a variety of circumstances. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). It is our understanding from these decisions that such result depends upon the circumstances of the particular case. In the present case, especially in view of the fact that the evidence referred to consisted only of identification in a police lineup prior to indictment, the deprivation claimed cannot be held to have occurred.

Affirmed.

BURGER, Circuit Judge (concurring):

Appellant Williams makes contentions which I believe deserve some comment if for no other reason than their novelty. Williams' argument is that because he had no counsel present at the line-up,[1] Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964), requires exclusion of trial testimony by three witnesses that they had identified him in a police line-up. In effect it is argued that

1. Williams' co-appellant Vaughn, whose conviction we have affirmed by order, Vaughn v. United States, No. 18826, March 19, 1965, makes a like contention based upon the *Mallory* Rule. No *Mallory* objection [Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479] was raised below, however, and none is available here. See Leigh v. United States, 117 U.S.App.D.C. 315, 329 F.2d 883 (1964) (concurring opinion of Wright, J.), and cases therein cited. Moreover, Vaughn failed to establish any detention—as yet a prerequisite to exclusion of evidence obtained by reason of an illegal detention. Assuming Vaughn to have been under arrest in accordance with his argument, however, and that his contentions are properly here for resolution, I believe them to be disposed of by the treatment which follows of Williams' *Escobedo* contentions.

Vaughn's further contention that actual courtroom identifications must be excluded as "poisoned fruit" has been rejected by our decision in Payne v. United States, 111 U.S.App.D.C. 94, 98, 294 F.2d 723, 727, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961):

"The consequence of accepting appellant's contention * * * would be that [the witness] would be forever precluded from testifying against Payne in court, merely because he had complied with the request of the police that he come to police headquarters and had there identified Payne as the robber. *Such a result is unthinkable.* The suppression of the testimony of the complaining witness is not the right way to control the conduct of the police, or to advance the administration of justice."
(Emphasis added.)

a police line-up must be a joint enterprise staged by the cooperative efforts of the police and defense counsel. I believe the argument lacking in merit in the face of the precision used by the Supreme Court to limit its holding:

"We hold * * * that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, *the police carry out a process of interrogations that lends itself to eliciting incriminating statements,* the suspect has requested and been denied an opportunity to consult with his lawyer, *and the police have not effectively warned him* of his absolute constitutional right to remain silent, the accused has been denied the 'Assistance of Counsel' in violation of the Sixth Amendment to the Constitution * * * and that *no statement elicited by the police during the interrogation may be used against him at a criminal trial.*"

378 U.S. at 490–491, 84 S.Ct. at 1765 (Emphasis added.) I read the *Escobedo* holding as setting up an exclusionary rule [2] which can be expected to function much as the *Mallory* Rule does for Rule 5(a) situations but primarily for the state courts. Its concern is to exclude the incriminating statements of a defendant whose situation meets the carefully articulated tests set out above: his own uncounseled incriminating words may not be used against him at trial if they were elicited by purposeful police interrogation without prior warning of his right to silence and right to counsel. In the federal courts *Escobedo* and *Mallory* apparently overlap, with the former case (along with Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)) supplying a possible independent basis for exclusion only of evidence derived from police conduct *after* a preliminary hearing, to which *Mallory* has no application.

Whatever the circumstances of an *Escobedo* objection, however, it seems to me we must look to *Mallory* cases for guidance. The scope of *Escobedo* may

**2.** Appellant argues that a finding of an *Escobedo* violation would compel reversal because the right to counsel is "jurisdictional." The argument is based on Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). That case does indeed speak in terms of jurisdiction, reflecting the old idea that lack of jurisdiction in the committing court was a necessary predicate for habeas corpus relief, the remedy there sought. It has since become clear that the habeas remedy is no longer bounded by the jurisdiction concept. See, e. g., Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (1963); Note, *Federal Habeas Corpus for State Prisoners: The Isolation Principle,* 39 N.Y.U.L.Rev. 78 (1964). The more recent right-to-counsel cases simply say that no prejudice need be shown to compel reversal where there has been a denial of the right. See, e. g., Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

But whichever rationale today supports the no-prejudice rule in the typical case in which an accused should have been afforded counsel but was not, *Escobedo* and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), seem to embody a more limited approach, focusing on the question of *admissibility at trial* of pre-trial statements made without counsel. See Jackson v. United States, 119 U.S.App.D.C. ——, 337 F.2d 136 (1964), in which both the majority and minority opinions assume the question to be one of admissibility of evidence. If this interpretation is correct, perhaps a harmless-error rule will attend *Escobedo-Massiah* violations as is true with *Mallory* violations.

If the contrary is true, however, and reversal must follow as of course upon the finding of an *Escobedo-Massiah* violation, doubtless *no such violation would be found* absent the use against a defendant in a criminal proceeding of statements elicited from him without counsel. Thus the *"Escobedo-Massiah* Rule" would be an exclusionary rule of evidence in substance if not in form. Certainly the development of the rule of these cases along *Mallory* lines would adequately serve the concern they express that police interrogation not be allowed to substitute for a trial.

well be narrower than that of *Mallory*;[3] it is certainly no broader. Our post-*Mallory* cases, confusing and conflicting though they are, make clear that the police line-up is not the kind of "interrogative" activity proscribed by Rule 5(a), and that the line-up is a valid police procedure; as such a line-up is not a "primary illegality" productive of excludable "poisonous fruit" evidence. See, *e.g.*, Copeland v. United States, 120 U.S.App. D.C. ——, 343 F.2d 287, Dec. 31, 1964; Fredricksen v. United States, 105 U.S. App.D.C. 262, 266 F.2d 463 (1959). Even if the line-up in the instant case, while appellant was without counsel, is somehow to be construed into a "primary illegality" under *Escobedo*, we would be unable to find a causal nexus between the line-up and the subsequent testimony; and such a connection is necessary for exclusion. See Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Copeland v. United States, *supra*; Smith v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879 (1963), cert. denied, 377 U.S. 954, 84 S.Ct. 1632, 12 L.Ed.2d 498 (1964); Payne v. United States, *supra*.[4]

Appellant Williams contends additionally that, right-to-counsel problems aside, the unchallenged admission of testimony that the complaining witness had previously identified Williams in a line-up may be noticed as "plain error affecting substantial rights." We have repeatedly held to the contrary. See, *e.g.*, Smith v. United States, 119 U.S.App.D.C. ——, 340 F.2d 797, Dec. 10, 1964, and cases therein cited. Moreover, we recently failed to find reversible error in a case where timely objection to such testimony was made at trial. Dix v. United States, No. 18855, D.C.Cir., Feb. 25, 1965.

A final aspect of this case merits some comment. Such "Disneyland" contentions as that absence of counsel at the police line-up voids a conviction are becoming commonplace. Some arise from the hard experience of court appointed lawyers who, having served diligently without compensation, later find themselves subjected to vicious and unwarranted attacks by their ex-clients for failing to raise some bizarre point conceived by the "legal experts" in prison. Having found that the indigent client's sense of gratitude is readily dulled by incarceration, some court appointed counsel find it expedient to protect themselves by raising every point, however, absurd, which indigent appellants suggest. Whether this practice, necessary though it may be thought to be, is in keeping with the best traditions of an independent bar is doubtful. Good and arguable contentions blended with the absurd tend to dilute the whole. That unpaid lawyers should be subjected to these attacks is especially ironic in this jurisdiction whose Bar has performed great public service in a manner not paralleled anywhere in the United States.

We will all do well to bear in mind the admonition that a criminal trial is not a sporting contest and that an individual's guilt and society's protection are not irrelevant. We accept it as fundamental that a defendant's lawyer must not be subject to intimidation by public opinion, by the opinion of the profession or of the presiding judge. But the imperative of this independence extends also to pressure *from the client*, especially as to court appointed counsel for an indigent, who seems to have less freedom to withdraw than a paid lawyer privately retained. But see Dillon v. United States, 230 F.Supp. 487 (D.Ore.1964) (appointment to represent indigent held to be taking of property within Fifth Amendment). In short the lawyer—if he is

3. Until clarified otherwise *Escobedo* should be limited to the conditions which the Supreme Court took such pains to enumerate in the opinion.

4. There is nothing to indicate that *Escobedo* has any application to the line-up procedure, since the very fact that the defendant is so tentatively identified as the guilty actor as to require a line-up suggests that police attention has not yet "focused" on him as a *suspect* to the degree required to bring *Escobedo* into play.

to be true to his profession—must be free of intimidation from any source *including his client*.

With the enormous expansion of indigent representation comes a need for some guidelines to protect the volunteer lawyer who, after full consideration, decides on a course of action which his indigent client opposes. As I see it that lawyer must be free to follow his own professional judgment and conscience no matter what his client thinks or be entirely free to withdraw rather than be compelled to advance absurd and nonsensical contentions on pain of a vicious attack from the jail house. We have no more right to ask volunteer lawyers to stultify themselves or prostitute their professional standards than we would have to demand that paid lawyers do so.