John W. JACKSON, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17746.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 12, 1963.

Decided Aug. 13, 1964.

Petition for Rehearing en Banc
Denied Oct. 8, 1964.

---

Mr. Michael A. Schuchat (appointed by this court), Washington, D. C., for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Frederick G. Smithson, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

This appeal [1] attacks Jackson's conviction of housebreaking, second degree murder and two counts of felony-murder. The jury recommended life imprisonment on the latter counts. Principally the appellant contends that the District Court erred in receiving the appellant's confession.

In the early morning hours of September 6, 1961, a police officer discovered an open door at a laundry in northwest Washington. His investigation led to the discovery of the prone body of Tony Philip Lee who died en route to a hospital. He had suffered skull fractures, eleven broken ribs and lacerations about the face and head. A medical expert gave as his opinion that death had followed from blows administered by a wrench found at the scene of the killing. Both Lee and the appellant had worked at the laundry. The owner, called to the scene, discovered that a "Coke" machine on the premises had been broken into, the cash register had been opened and emptied, and his tools had been brought up from the basement.

Appellant's cousin, one Pearson, testified that a few days before the attack, the appellant had asked him to join in the breaking and entering of the laundry, but Pearson refused. Appellant had told him "he was going up to the laundry and break in and get some money." On the night of September 5, 1961, the appellant had called Pearson and asked him to meet the appellant at a gasoline station. When he arrived there, Pearson traded shoes with the appellant for there were blood stains on the appellant's shoes. He told Pearson that "he did it" because Lee had recognized him; that he would never come back; that he had hit the man and blood had flowed, and he might have hit Lee too hard. Pearson at the

---

1. We heard argument several months ago but deferred decision pending disposition by the Supreme Court of the appeal in

Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

time observed a laundry bag full of coins in the back part of the appellant's automobile. The appellant's fingerprint was found on an interior portion of the Coke machine which could not have been accessible except to one who had broken into the equipment. Other evidence disclosed that appellant was seen driving to New York on September 6, 1961, and that he had picked up a passenger near Baltimore whom he told that "he had broken into a place" in Washington.

On September 8, 1961, the United States Commissioner issued a warrant for the arrest of the appellant on a felony-murder charge. On September 15, 1961, at 3:20 A.M., an agent of the F.B.I. arrested the appellant at Staten Island, New York. The F.B.I. agent immediately advised the appellant "that he did not have to make any statement, that any statement he did make would be used against him in a court of law, and that he was entitled to an attorney." Transported then to the Federal House of Detention in Manhattan, the appellant was presented by another F.B.I. agent before a United States Commissioner at about 11 A.M. The Commissioner informed the appellant of the charges against him and advised him "that he did not have to say anything if he did not desire to, that he could have an attorney if he so desired." A removal complaint was prepared, and the Metropolitan Police in the District of Columbia were notified.

Officers Weber and Moriarty arrived in New York from Washington about 1:30 P.M. on September 16. The appellant consented to see the officers who advised him that he did not have to speak to them. The testimony shows that "he sat there for a few minutes and then said he would like to tell us about it." The appellant then narrated to the officers how he had broken into the laundry, procured tools from the boiler room, and

how he then broke into the Coke machine and took all the money from the change holder.

Armed with a wrench, he listened outside of Lee's door in an effort to determine whether he had been awakened. Lee appeared and grabbed the appellant. The latter kept hitting Lee with the "monkey wrench" until he stopped fighting. Making his way from the laundry, the appellant called Pearson and told him what he had done. Other particulars need not be supplied except that while confessing, the appellant took a sheet of paper and drew a detailed diagram of the laundry premises and how he had gained access thereto.

Defense counsel moved to suppress "any and all confessions and admissions written or oral obtained by the United States since the date of his arrest and presentation to a committing magistrate." As grounds for the motion, appellant claimed that the confessions and admissions were elicited from him "involuntarily" in violation of the Fifth Amendment and of the appellant's right to counsel under the Sixth Amendment.

Appellant argues that the police officers may not testify to a voluntary confession given by one in lawful custody without an attorney, although the accused had been advised of his rights. The agents of the F.B.I., the United States Commissioner, and finally, the Metropolitan Police, had advised the appellant of his rights in language substantially as set forth in Rule 5 as incorporated into Rule 40(b) (2) of the Federal Rules of Criminal Procedure. This court has expressly held that the Sixth Amendment does not require that counsel be appointed at the preliminary hearing.[2]

A prisoner without counsel, but fully advised of his Rule 5 rights at a hearing, thereafter confessed to committing a robbery in Moon v. United States,[3] where we

2. Council v. Clemmer, 85 U.S.App.D.C. 74, 177 F.2d 22, cert. denied, 338 U.S. 880, 70 S.Ct. 150, 94 L.Ed. 540 (1949); and such is the general rule, Price v. Johnston, 144 F.2d 260 (9 Cir.), cert. denied, 323 U.S. 789, 65 S.Ct. 312, 89 L.

Ed. 629 (1944), rehearing denied, 323 U.S. 819, 65 S.Ct. 558, 89 L.Ed. 650 (1945).

3. 115 U.S.App.D.C. 133, 134, 317 F.2d 544, 545 (1962), cert. denied, 375 U.S.

said "Certainly, in view of the admitted fact that the Commissioner did exactly what Rule 5(b) required him to do, we cannot say that there was 'plain error' under Fed.R.Crim.P. 52(b)." Thus we refused to consider as possible error the failure to assign counsel in the preliminary proceedings before the Commissioner since the point had *not* been raised in the District Court.

In the instant case, the failure of the Commissioner in New York to appoint counsel was urged upon the District Court as a bar to receipt of the confession. Appellant has argued to us that White v. Maryland[4] requires reversal. In the *White* case the accused, not represented by an attorney, entered a plea of *guilty* at a preliminary hearing. That plea was received in evidence at the trial. This court, long since, had held in Wood v. United States[5] that an uncounseled plea of guilty at a preliminary hearing is not to be received in evidence at trial. Mr. Justice Rutledge there said:

> "The fairer practice and, we think, the only one consistent with the court's position, would advise the accused in all cases, before permitting him to speak even as a volunteer, of his right to counsel and would warn him that he need not speak and, if he does, it is at his peril. This would assure fairness to the accused and foreclose the possibility that he might act in ignorance."[6]

In the instant case, of course, the appellant had been warned not only by the F.B.I. agents and by the officers, but by the Commissioner himself.

██ ██ In the present case there was no evidence whatever that the appellant,

thrice warned, had in fact been coerced into a confession of a brutal murder. The Supreme Court in Malloy v. Hogan[7] reiterated the long proclaimed standard to be applied "wherever a question arises whether a confession is incompetent because not voluntary * * *." The confession must be " 'free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * *'" In other words the person must not have been *compelled* to incriminate himself." (Emphasis added.) The confession here fully met that standard: it was voluntarily given; he was in no way *compelled.*

Thus we pass to the Sixth Amendment point which we had hoped might be—but which was not—resolved in *Massiah, supra* note 1. The question now is, must a voluntary confession, tested as above discussed, be excluded because given at a time when the accused was not represented by counsel?

In Crooker v. California[8] no denial of *due process* occurred, the majority held, even though the record clearly disclosed that prior to his confession, the accused *asked for* and *was denied an opportunity to call a lawyer,* not yet retained.

In Cicenia v. Lagay,[9] the accused before his arrest had retained counsel who repeatedly sought access to his client while the latter was being questioned by police. To hold that due process had been denied, said the majority, "would mean that state police could not interrogate a suspect before giving him an opportunity to secure counsel. *Even in federal prose-*

884, 84 S.Ct. 154, 11 L.Ed.2d 113, rehearing denied, 375 U.S. 926, 84 S.Ct. 269, 11 L.Ed.2d 170 (1963).

4. 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

5. 75 U.S.App.D.C. 274, 128 F.2d 265 (1942).

6. *Id.* at 286, 128 F.2d at 277. This pronouncement by a former member of this court underlies FED. R. CRIM. P. 5.

7. 378 U.S. 1, 84 S.Ct. 1489, 1493, 12 L. Ed. 653 (1964).

8. 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); the dissenting Justices would have said due process required that "the accused *who wants a counsel* should have one at any time after the moment of arrest." *Id.* at 448, 78 S.Ct. at 1296 (Emphasis added.)

9. 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958).

*cutions this Court has refrained from laying down any such inflexible rule."* [10] (Emphasis added.)

Both *Crooker* and *Cicenia* "are not to be regarded as controlling" to the extent they may be inconsistent with Escobedo v. Illinois.[11] There the accused repeatedly insisted upon his right to advice from his own retained lawyer. The majority deemed of the essence that the suspect had "requested and been denied an opportunity to consult with his lawyer * * *" as appears from the holding as particularized.[12] The Court concluded thus:

> "We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and *its purpose is to elicit a confession*—our adversary system begins to operate, and, *under the circumstances here*, the accused must be permitted to consult with *his lawyer*." [13] (Emphasis added.)

The dissenters saw in the decision "another major step" toward the exclusion of "all admissions obtained from an individual suspected of crime, whether involuntarily made or not." Perhaps the Court will yet take that final "step," but the fact remains that it did not do so in *Escobedo*, a state case, nor did it do so in *Massiah, supra*.[14] The latter has no application whatever to the circumstances in the instant case.

In Massiah v. United States,[15] the accused had been indicted, had counsel and was at liberty on bail as the Government authorities well knew. Even so, acting in concert with a co-defendant who without Massiah's knowledge had agreed to become a witness for the Government,

the authorities concocted a deliberate and surreptitious subterfuge. They planted broadcasting equipment in the co-defendant's car. Then with receiving equipment in the following car they overheard Massiah's conversation. He was not aware that he was being victimized by the Government-conceived plot for his interrogation. He had not been put on notice that what he was saying was being recorded by federal agents. The Court had no difficulty under *such* circumstances in holding that the incriminating statements of the accused could not be used against him.

Obviously neither *Escobedo* nor *Massiah* can be read [16] as barring use of this appellant's confession. Many, learned in the law, deeply believe that no accused should be convicted out of his own mouth. But the Supreme Court has never announced any such proposition—not even where the accused had no attorney and had received no Rule 5 "judicial caution." United States v. Mitchell, 322 U.S. 65, 70, 64 S.Ct. 896, 88 L.Ed. 1140 (1944). We said as much ourselves only a month ago in Ramey v. United States, 118 U.S.App.D.C. ——, 336 F.2d 743 (1964), cert. denied, 85 S.Ct. 79 (1964) and see United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951) where Rule 5 advice had been imparted. If there were a rule that a confession may not be received *if made by an accused without counsel*, that would be the end of this case—and of scores like it.

We conclude that no rule of law required the exclusion of this appellant's confession, voluntarily made,[17] after he had been warned by the F.B.I., the police

10. *Id.* at 509, 78 S.Ct. at 1300.

11. 378 U.S. 478, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977 (1964).

12. *Id.*, 84 S.Ct. 1765.

13. *Id.*, 84 S.Ct. 1766.

14. And see again Cicenia, *supra* notes 9 and 10, cited to the text: "Even in federal prosecutions this Court has refrained from laying down any such inflexible rule." See generally, *An His-*

*torical Argument for the Right to Counsel During Police Interrogation*, 73 YALE L.J. 1000, 1054 (1964).

15. *Supra* note 1.

16. And see *The Coming of Massiah: A Demand for Absolute Right to Counsel*, 52 GEO.L.J. 825, 842, 852 (1964).

17. Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

and the United States Commissioner acting pursuant to Rule 40(b). He had not requested that counsel be appointed[18]; he had retained no lawyer; that one was not then appointed for him denied him no right; and as the law now stands, there is no automatic rule of exclusion which will bar use of such a confession by an accused who has no lawyer, under circumstances such as appear on the record before us.

One additional point may be noticed. D.C.Code § 14–306 (Supp. III, 1964) provides, pertinently, that a wife "is competent but not compellable to testify for or against" her husband and a "wife is not competent to testify as to any confidential communications made by" her husband during the marriage. Here in aid of the appellant's motion for a mental examination, his wife executed an affidavit setting out that he had always been rational, devoted and understanding until about one month prior to the date of the crime when he became irrational, violent, unreasonable, and began drinking heavily.[19] Defense psychiatrists were cross examined by the prosecutor who put before the experts the substance of the wife's affidavit. The appellant would have us say that he may *invoke* action by the court through use of the wife's affidavit wherein she had abandoned her privilege to refrain from testifying, and at the same time *bar* the Government's use of that same affidavit for purposes of impeachment.

█ We may suggest that the pursuit of truth in a trial does not occur on a one way street. The wife's testimony by way of affidavit had not been "compellable" to be sure, but the appellant himself had procured and offered that affidavit in his own behalf. By way of analogy, we may observe that Congress has barred physicians from disclosing information, confidential in its nature which has been acquired while attending a patient in a professional capacity. But the section does not apply to evidence in criminal cases where the accused is charged with causing the death of another, or where the disclosure is required in the interests of public justice, or with respect to evidence in pretrial proceedings in a criminal case where a question arises concerning the mental condition of the accused. D.C.Code § 14–307 (Supp. III, 1964). Language substantially similar was before us in Parker v. United States, 98 U.S.App.D.C. 262, 235 F.2d 21 (1956), where we held that the ordinarily confidential nature of the communication to a doctor at St. Elizabeths must give way when the accused has raised the defense of insanity.[20]

We are satisfied that there was no error affecting substantial rights.

Similarly we find lacking in substance such other contentions as have been submitted to us by able court-appointed counsel. Finding no error, the conviction is

Affirmed.

BURGER, Circuit Judge:

I do not read the recent holdings of the Supreme Court, far-reaching as they are in excluding voluntary utterances, to render inadmissible all statements made by an uncounselled person in custody. Since these cases are not controlling on the facts shown in this record, I need deal with them no further in order to join in affirming the convictions.

FAHY, Circuit Judge, dissenting:

Appellant was convicted of housebreaking, second degree murder and on two

---

18. If "he *makes the request for a lawyer* and *it is refused, he is denied*" his Sixth Amendment rights. Culombe v. Connecticut, 367 U.S. at 637, 81 S.Ct. at 1897, concurring opinion. (Emphasis added.) Cf. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), where again the accused had requested but had been denied counsel.

19. It was not suggested nor does it appear that her description of his traits depended upon "confidential communications."

20. Cf. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

counts of first degree murder, and was sentenced to life imprisonment. His principal defense, supported by considerable evidence, was insanity.

It appears that on September 5, 1961, appellant broke into a laundry in Northwest Washington and there assaulted and caused the death of Tony Philip Lee. In a confession appellant admitted the charges and explained in detail the events leading up to and following the homicide. Over his objection the confession was used extensively by the prosecution in cross-examination of defense psychiatrists for the purpose of rebutting the defense of insanity.

Appellant does not contend that the confession was inadmissible as involuntary or coerced, or under the *Mallory* rule. His position is that the confession was inadmissible because obtained by the police in a manner which was inconsistent with his right to the assistance of counsel guaranteed by the Sixth Amendment.

The evidence of the prosecution is that the confession was obtained in the circumstances now stated. On September 8, 1961, pursuant to a police complaint showing probable cause to believe appellant was guilty of first degree murder, the United States Commissioner in the District of Columbia issued a warrant for appellant's arrest. At 3:20 A.M. on September 15, 1961, he was arrested in New York City by an agent of the Federal Bureau of Investigation. There is testimony, though no contemporaneous record, that he was advised that he did not have to make any statement, that any statement he made could be used against him, and that he was entitled to an attorney. He was later taken to the nearby Federal Detention Headquarters.

At 11:00 A.M. on September 15 appellant was taken before a United States Commissioner in New York City for removal proceedings in accordance with Rule 40(b), Fed.R.Crim.P.[1] The removal complaint alleged that a complaint and arrest warrant charging appellant with first degree murder had been issued in the District of Columbia and that appellant had fled the jurisdiction to avoid prosecution for murder. After the proceedings before the Commissioner appellant was returned to the Detention Headquarters.

On the following day, September 16, at approximately 1:30 P.M. two officers of the Metropolitan Police Department of the District of Columbia arrived in New York for the purpose of bringing appellant back to this District.

Upon their arrival at the Detention Headquarters they asked if they could speak to appellant, and were taken to a small room off the prisoners' corridor. A few minutes later appellant was brought to this room. We have no record of what occurred, but the officers testified that they identified themselves, told appellant they were investigating the death of Tony Philip Lee with which he was charged, and that he did not have to talk to them if he did not wish to do so. According to their further testimony appellant "sat there for a few moments and then he said he would like to tell

---

1. Rule 40(b) provides in part:

"(1) Appearance before Commissioner or Judge. If a person is arrested upon a warrant issued in another state at a place 100 miles or more from the place of arrest, or without a warrant for an offense committed in another state at a place 100 miles or more from the place of arrest, he shall be taken without unnecessary delay before the nearest available commissioner or a nearby judge of the United States in the district in which the arrest was made.

"(2) Statement by Commissioner or Judge. The commissioner or judge shall inform the defendant of the charge against him, of his right to retain counsel and of his right to have a hearing or to waive a hearing by signing a waiver before the commissioner or judge. The commissioner or judge shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him, shall allow him reasonable opportunity to consult counsel and shall admit him to bail as provided in these rules. * * * "

us about it," and made his detailed confession.

Bearing on another aspect of the case additional facts are now noted. Prior to trial appellant through his counsel moved for a mental examination. Pursuant to a ruling by the trial court that an affidavit in support of the motion was necessary, appellant's wife filed an affidavit stating that for the past three and one-half years appellant had been a rational and devoted person until about one month before the date of the crime alleged, when he began acting in an irrational, unreasonable and violent manner. Over defense objection that it violated the privilege of one spouse not to be compelled to testify against another the prosecution recited the substance of the affidavit during the cross-examination of defense psychiatrists and also during the prosecution's examination of its own rebuttal psychiatrists.

I. Appellant was being proceeded against on a capital charge when the confession was obtained by the police. He was twenty years of age, of limited mental capacity, in a strange city, and at no time had the assistance of counsel or a reasonable opportunity to consult counsel as required by Rule 40(b) (2), *supra* note 1. He was under the control of the officers, who confronted him with a capital charge. He was a person accused and his confession was the result of police activity which was clearly designed to elicit the statements which were obtained.

In my view it was error to permit the use of the confession at his trial, for I think it was obtained in a manner which was inconsistent with appellant's rights guaranteed by the Sixth Amendment, particularly "to have the Assistance of Counsel for his defense," which he had not waived.

It has now been held in cases involving a variety of circumstances that self-incriminating statements of one accused of crime, elicited prior to trial and when the accused is without the assistance of counsel, are inadmissible at his trial because in derogation of the right to such assistance guaranteed by the Constitution. White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Escobedo v. Illinois, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Queen v. United States, 118 U.S.App.D.C. ——, 335 F.2d 297 (1964). And see the concurring opinions in Spano v. New York, 360 U.S. 315, 324, 326, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), which involved a state prosecution, so that the constitutional basis for exclusion of the confession was the Due Process Clause of the Fourteenth Amendment. Mr. Justice Stewart, joined by Mr. Justice Douglas and Mr. Justice Brennan, stated that not only was the confession inadmissible because coerced, as held in the majority opinion authored by the Chief Justice, but "the absence of counsel when this confession was elicited was alone enough to render it inadmissible." He pointed out that due process contemplates a trial "in an orderly courtroom, presided over by a judge, open to the public, and protected by all the procedural safeguards of the law." To like effect is Mr Justice Douglas' opinion in the same case, concurred in by Mr. Justice Black and Mr. Justice Brennan. And I think it is clear that these views have the adherence of a majority of the Court.

In *Massiah* it was deemed important that the self-incriminating statements held inadmissible were secured after indictment; but in *Escobedo* they preceded indictment. The Court reached the same result, however; for other circumstances in *Escobedo* were as persuasive against admissibility as the fact of an indictment in *Massiah*. These circumstances were that the case had reached an accusatory stage, the police had refused to permit the accused to consult with his lawyer, and they had failed to advise him of his absolute right to remain silent.

Our case has its own factual setting; but it seems to me the Supreme Court has established a principle to be applied in the future to cases which are not of

an exact factual likeness to those it has decided in the past. No two cases are alike. The value of constitutional precedents is not merely to guide to a decision on like facts. Their value is also in the exposition of legal principles to be applied to facts which, though different, rationally call for application of the principles which have been exposited. The exclusionary rules are not prisoners of the particular factual situations where the rules have been applied. See Queen v. United States, *supra.*

In the case at bar the circumstances we have outlined bring it within the exclusionary rule illustrated by the decisions cited. To have had a reasonable opportunity to adopt a course of conduct which would not prejudice his defense appellant needed utterly the assistance of counsel when called upon by the officers to respond to the charge of responsibility for the death of Mr. Lee. If his ensuing confession is used at his trial appellant loses the benefit of counsel for so much of his trial as brings before the jury the self-incriminating statements elicited at the Detention Headquarters when he was without counsel or the advice of counsel. To admit such statements throws the trial back, as it were, to the room where the statements were made, whereas the Constitution calls for the trial in a "courtroom presided over by a judge, open to the public, and protected by all the procedural safeguards of the law."

It is of no great consequence that appellant may have been advised he need make no statement. Aside from the fact that he could hardly have remained silent when accusesd, advice from the police or even a United States Commisssioner that he may remain silent is quite different from being told by counsel that he should or should not do so.[2]

And it is of no significance that appellant had not requested counsel before making his confession. In Lee v. United States, 322 F.2d 770 (5th Cir. 1963), in which the use at trial of a confession obtained from the accused before he had had opportunity to consult with counsel was held violative of due process, the court stated: "The record does not show whether Lee requested counsel or not at the time his interrogators appeared or before they opened his cell door. * * * 'But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' Carnley v. Cochran, 1962, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70. Nor can there be a presumption of waiver of counsel. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461." 322 F.2d at 777.[3] It should also be noted that the New York Court of Appeals on two occasions has held that an accused's right to counsel has been denied by the evidentiary use of confessions obtained in circumstances substantially similar to those now before this court. See People v. Rodriguez, 11 N.Y.2d 279, 183 N.E.2d 651, 229 N.Y.S.2d 353 (1962); People v. Meyer, 11 N.Y.2d 162, 182 N.E.2d 103, 227 N.Y.S. 427 (1962). These cases were cited with approval by the Supreme Court

2. *In* Ricks v. United States, 118 U.S.App. D.C. ——, 334 F.2d 964 (1964), this court held that certain statements made by the accused were inadmissible at his trial because obtained before he had had the assistance of counsel, notwithstanding the fact that prior to making the statements the accused had been presented before a magistrate who had advised him of his right to remain silent. See also Queen v. United States, *supra.*

3. As one court has pointed out, a failure to request counsel has significance only if it amounts to a waiver of that right; but the courts will indulge every reasonable presumption against such a waiver and one will not be found unless it is made in clear and unequivocal terms by an accused fully aware of its consequences. Griffith v. Rhay, 282 F.2d 711, 717 (9th Cir. 1960), cert. denied, 364 U.S. 941, 81 S.Ct. 460, 5 L.Ed.2d 373 (1961).

"Further, the mere failure to request the presence of a retained or an appointed counsel should not be deemed an intelligent waiver, since a particular defendant who does not request aid probably has as much or more need of effective assistance than one who does so request." Note, 61 Colum.L.Rev. 744, 748 (1961).

in its decision in *Massiah*. See 377 U.S. at 205, 84 S.Ct. at 1202; and in the same connection see *Escobedo, supra* at 84 S.Ct. 1758.[4]

That the use of the confession was prejudicial is clear. All else aside it was effectively used by the prosecution to convince the jury that appellant was criminally responsible and therefore should not be acquitted on the ground of insanity. Indeed, the recital by appellant in the confession of the details of the brutal homicide may well have so affected the jury as to have been decisive in causing them to reject his defense of insanity. Doubts as to this defense may have been resolved against him by the prejudice evoked by the nature of the homicide, as recited in his confession.

It seems to me that the issue whether under the law the perpetrator of this terrible homicide should be executed, imprisoned for life, or placed in an institution for the mentally ill, ought not to turn upon self-accusatory words attributed to him at the secret interrogation in New York, when neither he nor society had the professional assistance, or the opportunity to obtain it, the need for which is made plain by the guarantee of the right to it contained in the supreme law of the land.

II. A second ground for reversal is urged, namely, the use made of the wife's affidavit executed to support appellant's motion for a mental examination. 14 D.C.Code § 306(a) (1964 Supp.) provides:

"In civil and criminal proceedings, a husband or his wife is competent but not compellable to testify for or against the other."

The affidavit, executed for the limited purpose stated, was used to support testimony of government psychiatrists called to rebut the testimony of defense psychiatrists whose opinions were based in part upon knowledge obtained in conversations with the wife. It was also used to rebut the testimony of a defense psychologist whose testimony was in no part based upon such knowledge. The defense objected to this use of the affidavit as a violation of the privilege.

That the privilege applies to such out-of-court statements, as well as to testimony given during a trial, seems well established. 8 Wigmore, Evidence § 2232 at 225–26 (McNaughton Rev. 1961); Olender v. United States, 210 F.2d 795, 800 (9th Cir. 1954); Peek v. United States, 321 F.2d 934, 943 (9th Cir. 1963), cert. denied, 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964). Our decision in Smith v. United States, 114 U.S.App.D.C. 140, 312 F.2d 867 (1962), is not apposite, for there, as the opinion points out, the affidavit was that of the accused, and was used not to prove the truth of what was contained therein but for the limited purpose of impeaching his credibility when he took the stand in his own defense.

Were the present conviction reversed and the case remanded for a new trial I would wish to decide definitively whether the privilege was here violated, as a guide to the trial court on a retrial. Since, however, the conviction is affirmed I do not resolve the question, though I could appropriately do so for myself notwithstanding affirmance. I add that it appears to me the privilege probably was violated by the use made of the wife's affidavit during the trial itself.

I would reverse and remand.

---

4. In addition to the cases which rest upon the Constitution, above cited, the use made of the confession in this case I think is inconsistent with the maintenance of the fair administration of justice in a federal court required under the supervisory power referred to in Cicenia v. Lagay, 357 U.S. 504, 508–509, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958).