**Earl R. CEPHUS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18669.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 15, 1965.

Decided June 21, 1965.

Petition for Rehearing En Banc Denied Oct. 5, 1965.

Certiorari Dismissed Nov. 4, 1965. See 86 S.Ct. 229.

Washington, Circuit Judge, dissented.

Messrs. David W. Kindleberger and Victor P. Kohl, Jr. (both appointed by this court), Washington, D. C., for appellant.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge:

This case arises out of Appellant's convictions on two counts of unauthorized use of a motor vehicle.[1] After arrest Appellant had a preliminary hearing on October 31, 1963 and was judicially advised and warned of his right to remain silent, his right to counsel and the possibility of hostile use of his statements. While lodged in the D.C. Jail on November 17, more than two weeks after his Rule 5 preliminary hearing, he made a request in writing to see Captain Williams of the Auto Squad. The next day Williams and Detective Horrigan came to see Appellant who again consented in writing to see them. At the interview, he admitted three auto thefts, including the one charged, and asked about pleading guilty to a misdemeanor charge. The officers told Appellant the latter request would be referred to the United States Attorney.

On trial the Government did not rely on Appellant's statements as part of its case in chief. But when Appellant testified on his own behalf and on cross examination denied all three car thefts and denied ever making admissions to Captain Williams or Detective Horrigan, the Government introduced testimony of the two officers as to the statements made by Appellant two weeks after the preliminary hearing. At this point the District Judge held a hearing without a jury

---

1. Apparently because of a clerical error, the District Court's judgment reflects conviction of one count of unauthorized use and one count of grand larceny. The indictment contained a grand larceny count and an additional unauthorized use count, as to both of which the Court entered judgment of acquittal at the close of the Government's case in chief. We remand to the District Court under 28 U.S.C. § 2106 to have the judgment corrected to reflect that count two charged unauthorized use, not grand larceny.

present to develop evidence as to the circumstances surrounding the statements.

The testimony of Williams and Horrigan was admitted in evidence over objections and no request was made then or later than any limiting or cautionary instruction be given the jury. Appellant now urges that the receipt of this testimony without cautionary instructions is "plain error" under Rule 52(b). FED. R.CRIM.P., which we are bound to notice even though the Appellant made no request.

The contention is also made that the incriminating statement must be excluded under Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 977 (1964), because Appellant had no counsel at the time. But those cases are not to be read as rendering inadmissible all uncounseled utterances made by an accused or arrested person. Long v. United States, D.C.Cir., 338 F.2d 549, 1964. The *Escobedo* holding must be read in light of its facts and especially of the purposeful exclusion of Appellant's waiting lawyer from an opportunity to counsel his client while police pursued their interrogation. There, as in *Massiah*, affirmative police action existed preventing counsel and advice after the time when, as the Supreme Court decided on the facts in those cases, the right to consult with counsel had attached. Nothing resembling that is shown here. See Jackson v. United States, 119 U.S.App.D.C. 100, 337 F.2d 136 (1964). Nor does the present case bear a significant resemblance to Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964 (1964), where

> Ricks was committed to jail pending the determination of probable cause, and the hearing thereon was con-

tinued solely \* \* \* to obtain counsel. But the police nipped this opportunity in the bud by virtually following upon Ricks' heels, from the Commissioner's hearing room into the cellblock to continue their interrogation.

118 U.S.App.D.C. at 221, 334 F.2d at 969. Two members of a division of this court excluded Ricks' statements thus obtained, purporting to rely upon this court's "supervisory power" over the administration of criminal justice in the District of Columbia. Even if the *Ricks* panel properly assumed to exercise this supervisory power—a function some believe best left to the court sitting en banc—the instant case is distinguishable from *Ricks* on its facts.

We cannot either agree with the dissenting view that the present record discloses anything resembling the police conduct revealed in Queen v. United States, 118 U.S.App.D.C. 262, 335 F.2d 297 (1964), and Johnson and Stewart v. United States, 120 U.S.App.D.C. ——, 344 F.2d 161 (1964). Here there is no showing of police interrogating an uncounseled defendant during the course of a continuance of the preliminary hearing granted for the purpose of securing counsel.

Here, in marked contrast to the cases relied on by the dissent, it was the Appellant who requested in writing to see the police concerning a newspaper article on the subject of his arrest. When the police went to his cell it was not for their purposes, but for what Appellant, correctly or not, conceived to be in his interest. We find unconvincing the dissent's emphasis of the fact that Appellant up to them had been charged only with unauthorized use of one vehicle.[2] We need not speculate concerning the content of the news article about which

---

2. Two of the four counts Appellant found himself charged with after the interview were dismissed by the trial court. Of the remaining two, the Chevrolet charge had already been made before the interview and the Chrysler charge already had an independent basis in the statement of a witness, which was shown to Appellant at the interview. We find it difficult to see anything unconscionable in these circumstances.

Appellant was concerned or about his motives for asking to see the police; Appellant's own testimony reveals that he knew at the time of arrest that the police were interested in more than one automobile:

> So I stated to the officer that I didn't know a thing about this car [a Chevrolet]. So he said there had been recent thefts in the area ＊ ＊ ＊. And he looked over to the Ford and it had dealer's tags. And he told his partner, he said, "I bet this is another car that we're looking for."

It cannot have come as much of a surprise to Appellant that the officers who came to the cell-block in response to his request were interested in the Ford as well as the Chevrolet, as to which he had already been charged. Nor was it improper for the police to reveal their evidence (a witness' statement) to Appellant concerning use of a Chrysler, later the subject of count one of the indictment—of which he stands convicted. Once Appellant had indicated a willingness to bargain surely the disclosure to him of his opponent's hand should not support his objection here.

■ The simple fact is that Appellant gambled and lost, and now seeks to "have his cake and eat it too." Unless we are prepared to hold that police officers must refuse to listen to any person in custody as soon as the possibility of a "bargain" is mentioned or a defendant otherwise spontaneously initiates a discussion of the charges against him, we must hold the police action here permissible. We cannot say, on this record, that the officers behaved in such a way as to deprive Appellant of his right to counsel as that right has so far been defined.

Since we conclude that Appellant's statements were admissible against him as part of the Government's case-in-chief, it follows that no cautionary instructions were necessary.[3] Accordingly we affirm Appellant's conviction subject to the above noted correction to be made upon remand.

Remanded with directions.

DANAHER, Circuit Judge (concurring):

I concur in Judge Burger's opinion. I wish to point up a bit more sharply additional reasons for my rejection of the theory of the dissenting opinion. Perhaps mine is an old-fashioned approach, but I think that when we cite Supreme Court precedents, we should look—not to dictum—but to precisely what the Court has held.

For example, in Escobedo v. Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977 (1964), the Court announced that an accused has been denied his Sixth Amendment rights under the following circumstances:

> "*We hold,* therefore, that *where, as here,* the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, *the suspect has requested and been denied an opportunity to consult with his lawyer,* and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. [335] at 342 [83 S.Ct. 792, at 795, 9 L.Ed.2d 799], and that no

---

3. We make no determination as to which portions, if any, of Appellant's statements would have been admissible by analogy to Walder v. United States, 347 U.S. 62, 63, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954), as impeachment, had his statements been in-admissible against him in chief. Nor do we decide whether plain error might ever inhere in a failure to give cautionary instructions concerning *Escobedo-Massiah* statements inadmissible in chief but offered as impeachment.

statement elicited by the police during the interrogation may be used against him at a criminal trial." (Emphasis supplied.)

In that same *Escobedo* case, a dissent was written by Mr. Justice Stewart. He explained precisely what had been held in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). He was the author of the *Massiah* opinion. It fairly may be assumed that he knew exactly what he had been trying to say. So, he pointed out the following:

"Massiah v. United States, 377 U.S. 201, [84 S.Ct. 1199, 12 L.Ed.2d 246] is not in point here. In that case a federal grand jury had *indicted Massiah. He had retained a lawyer* and entered a formal plea of not guilty. Under our system of federal justice *an indictment and arraignment are followed by a trial, at which the Sixth Amendment guarantees the defendant the assistance of counsel.* But Massiah was released on bail, and thereafter agents of the Federal Government deliberately elicited incriminating statements from him in the absence of his lawyer. *We held that the use of these statements against him at his trial denied him the basic protections of the Sixth Amendment guarantee.*" (Emphasis supplied.) (Footnote omitted.) Escobedo v. Illinois, 378 U.S. 478, 493, 84 S.Ct. 1758, 1766 (1964).

So it was that in Jackson v. United States, 119 U.S.App.D.C. 100, 337 F.2d 136 (1964), we noted that neither *Escobedo* nor *Massiah* can be read as barring use of Jackson's confession. We very carefully framed the issue as the majority viewed it contrasted against the position taken by our dissenting colleague. The majority said:

"Many, learned in the law, deeply believe that no accused should be convicted out of his own mouth. But the Supreme Court has never announced any such proposition—

not even where the accused had no attorney and had received no Rule 5 'judicial caution.' United States v. Mitchell, 322 U.S. 65, 70, 64 S.Ct. 896, 88 L.Ed. 1140 (1944). We said as much ourselves only a month ago in Ramey v. United States, 118 U.S. App.D.C. 355, 336 F.2d 743, cert. denied [379 U.S. 840], 85 S.Ct. 79, [13 L.Ed.2d 47] (1964), and see United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951) where Rule 5 advice had been imparted. If there were a rule that a confession may not be received *if made by an accused without counsel,* that would be the end of this case—and of scores like it." (Emphasis in the original.) 119 U.S. App.D.C. at 104, 337 F.2d at 140.

The Supreme Court refused to take that case. Certiorari was denied, 380 U.S. 935, 85 S.Ct. 944, 13 L.Ed.2d 822 (1965).

Here, as Judge Burger has pointed out, Cephus himself sent for the officers. He wanted to make a "deal." The record shows, and not the least effectively because of his own discredited testimony, that he was a totally wary individual who sought to exculpate himself. He had received his Rule 5 "judicial caution." His statements to the officers were received by way of impeachment only after he had testified that he had not consented to see the police and that he had no recollection of "requesting to talk to the officers." Even then, the trial judge excused the jury and held a hearing in order to ascertain the circumstances under which the inculpatory admissions had occurred. I think the trial judge did not err.

When an accused in a criminal case takes the stand and

"testifies in his own defense his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination. '[H]e has no right to set forth to the jury all the facts which tend in his favor without laying himself

open to a cross-examination upon those facts.' Fitzpatrick v. United States, 178 U.S. 304, 315 [20 S.Ct. 944, 949, 44 L.Ed. 1078]; and see Reagan v. United States, 157 U.S. 301, 304–305 [15 S.Ct. 610, 611, 39 L.Ed. 709]." [1]

The courts do not justify letting a "defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954).

This appellant was in lawful detention.[2] He was properly subject to cross-examination.[3] I am not persuaded by our dissenting colleague's reliance upon Johnson and Stewart v. United States,[4] first, in that it is distinguishable on its facts, but more importantly, because in my view, the case was wrongly decided. Except for the technicality as to sentence, I would affirm the conviction.

WASHINGTON, Circuit Judge (dissenting):

On the basis of recent cases in this court and the Supreme Court, it seems clear that appellant's incriminating statements would have been inadmissible in the Government's case in chief. Ricks v. United States, 118 U.S.App.D.C. 216, 334 F.2d 964 (1964); Queen v. United States, 118 U.S.App.D.C. 262, 335 F.2d 297 (1964); Johnson and Stewart v. United States, 120 U.S.App.D.C. 69 at 70, 344 F.2d 163 at 164 (1964); see also Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The Government conceded on oral argument that the statements were not properly

admitted for impeachment if they were not admissible in the Government's case in chief. Hence appellant's conviction should be reversed.

An indictment charging Cephus with three counts of unauthorized use of a motor vehicle and one count of grand larceny was returned on December 2, 1963. He was convicted on two counts of unauthorized use after a jury trial; the trial judge dismissed the other two counts at the conclusion of the prosecutor's case in chief.

Appellant was arrested on October 30, 1963, and brought before the United States Commissioner the following morning on a complaint alleging unauthorized use of one car—a Chevrolet. The record of proceedings in the preliminary hearing shows that the appellant was given the routine warnings and informed of his right to retain counsel. Cf. Blue v. United States, 119 U.S.App. D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed. 964 (1965). There is no suggestion on the record that he was told that he had a right to have counsel appointed or that he "freely and intelligently" waived his right to counsel. Cf. Blue v. United States, *supra* at 319, 320, 342 F.2d at 898–899. The record shows that defendant requested a prompt hearing. The Commissioner concluded that probable cause was shown and committed appellant to the District of Columbia Jail to await an appearance before the grand jury.

While in the D. C. Jail, on November 17, 1963, before his indictment, appellant filed a written request to see Captain Williams or one of his aides in the Auto Squad "about an article in the paper which involved me." On the stand

1. Brown v. United States, 356 U.S. 148, 154–155, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958).

2. Cf. Bailey v. United States, 117 U.S.App. D.C. 241, 328 F.2d 542, cert. denied, 377 U.S. 972, 84 S.Ct. 1655, 12 L.Ed.2d 741 (1964).

3. Radio Cab v. Houser, 76 U.S.App.D.C. 35, 37, 128 F.2d 604, 606 (1942); Walder

v. United States, text, *supra;* Raffel v. United States, 271 U.S. 494, 497, 46 S.Ct. 566, 70 L.Ed. 1054 (1926); Long v. United States, 119 U.S.App.D.C. 209, 338 F.2d 549 (1964).

4. 120 U.S.App.D.C. 69, 344 F.2d 163 (1964), Senior Circuit Judge Wilbur K. Miller dissenting.

appellant stated that he did not remember requesting to see Captain Williams. The appellant consented in writing to see the officers on November 18.

What went on during this 50-minute interview is disputed.[1] The appellant testified that he neither confessed to the four crimes for which he was tried nor offered to plead guilty to misdemeanor charges. The two policemen stated that they questioned the appellant and confronted him with incriminating evidence; that he admitted committing the four crimes for which he was subse-

quently indicted; and that he asked what "his chances were to plead to a misdemeanor rather than felonies to these counts." There is no suggestion in the record that appellant confessed spontaneously.[2] Since his confession was obtained through "a process of interrogations that lends itself to eliciting incriminating statements," Escobedo v. Illinois, 378 U.S. at 491, 84 S.Ct. at 1765, in the absence of counsel while held following a preliminary hearing, it is not admissible.[3] Appellee's brief suggests that the "instant facts are not

---

[1]. This court has noted that:

"* * * conflicts in testimony concerning what is actually said and done in the privacy of police detention prior to arraignment seem almost inevitable. This is one of the problems which Rule 5(a) was intended to obviate." Seals v. United States, 117 U.S.App.D.C. 79, 81 n. 4, 325 F.2d 1006, 1008 n. 4 (1963), cert. denied, 376 U.S. 964, 84 S.Ct. 1123, 11 L.Ed.2d 982 (1964).

In Lee v. United States, 322 F.2d 770 (5th ·Cir. 1963), the court looked with scepticism on the statements of the questioning officers, noting that the lack of a reliable record is a major objection to all *ex parte* interrogations by the police of an uncounseled prisoner. The court stated:

"Even if not fully worth his salt, we may be sure that he [a lawyer] would have insisted that any admission would have to be in the form of a written statement, signed or approved by the accused or a record of some kind made and attested to by a court reporter. There would have been some assurance of the accuracy of the agent's recital of what Lee reputedly admitted. See Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Here we have a narrative of oral conclusory statements, the accuracy of which is dependent upon the memory and conscience of the inquisitor." 322 F.2d at 777.

[2]. Contrast Long v. United States, 119 U.S. App.D.C. 209, 338 F.2d 549 (1964). In *Long* the court refused to lay down a blanket rule excluding all uncounseled admissions made while in police custody. But there the defendant had spontaneously "volunteered the statement that he had shot the decedent" in a corridor of the police station "even before the officers could identify themselves." *Supra* at 210,

338 F.2d at 550. The court in *Long* was dealing with a spontaneous utterance of the kind excepted from the coverage of the *Mallory* rule. Naples v. United States, 113 U.S.App.D.C. 281, 307 F.2d 618 *(en banc* 1962); *cf.* Veney v. United States, 120 U.S.App.D.C. 157, 344 F.2d 542 (1965) (concurring opinion). See also Harling v. United States, 111 U.S. App.D.C. 174, 177, 295 F.2d 161, 164 *(en banc* 1961). On the facts of this case we need not consider the relevance of the spontaneity exception to right to counsel cases.

See also Jackson v. United States, 119 U.S.App.D.C. 100, 337 F.2d 136 (1964), cert. denied, 380 U.S. 935, 85 S.Ct. 944, 13 L.Ed.2d 822 (1965). In its brief in this case appellee notes that in *Jackson* the defendant "spontaneously confessed." "Absent was a police presence aimed at the conscious elicitation of a confession." The same cannot be said about the instant case. The police conceded that they questioned appellant and confronted him with evidence implicating him in a crime for which he was not even charged at that time; it is apparent that their purpose was to elicit an incriminating statement. The fact that the confession was elicited in what might have been a bargaining context is irrelevant. If the police were engaged in "the conscious elicitation of a confession" from an uncounseled accused in these circumstances, such a confession cannot be used as direct evidence. Appellee argues that "the touchstone in these cases is the quest for a confession by the police." But it finds no such quest here. I agree with the "touchstone" suggested by appellee; I disagree only with its application in this case.

[3]. The admissibility of appellant's confession does not turn on whether the police activity was "improper" or "unconscionable." The policy behind *Escobedo* is to

qualitatively different from" a situation in which "Appellant loudly exclaimed his guilt from the jail cell and this was overheard by a guard." This analogy seems wholly inconsistent with the policemen's testimony describing the interview.

The instant case is very close on its facts to Johnson and Stewart v. United States, *supra*. In that case Johnson made an uncounseled confession in the course of interrogation in jail nineteen days after his preliminary hearing had been continued to permit him to obtain and consult counsel. He had consented to see the officer at the time of the interrogation, even though he had not obtained counsel. The United States Commissioner had told the defendants that they were not required to make a statement and that they had a right to retain counsel. The interrogating policeman testified that he again informed the defendants of their rights at the beginning of the interview. The confession was admitted for purposes of impeachment. On appeal, we reversed the conviction. After pointing out that Johnson and Stewart were then confined in the District of Columbia Jail, and were interviewed together there by a police officer, we stated:

> give real meaning to the constitutional guarantee of the right to counsel, and assure that the right at trial does not become meaningless. 378 U.S. at 487, 84 S.Ct. at 1763. The primary purpose of the rule is not to "police the police," but to assure a defendant of the assistance of counsel at all essential points in the criminal process.
>
> The police can continue to bargain with uncounseled defendants; but they cannot use their uncounseled statements against them in a trial. There is no reason why representation of the accused would preclude bargaining; it might well facilitate it.

4. While the decision in *Ricks* rested on the exercise of our supervisory power, the later *Queen* case reached the same result relying on *Massiah* and *Escobedo*. The Fifth Circuit in Lee v. United States, 322 F.2d 770 (1963), reached a similar result in the exercise of its supervisory power.

5. It is useful to compare the majority's distinctions of *Escobedo* and *Massiah*

"There is no longer any doubt that the confession obtained from Johnson, under such circumstances, was inadmissible as part of the Government's case in chief. Ricks v. United States, 118 U.S.App.D.C 216, 334 F.2d 964, decided June 9, 1964. See also, Queen v. United States, 118 U.S.App.D.C. 262, 335 F.2d 297, decided June 29, 1964, Cf. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)." 120 U.S.App.D.C. at 70, 344 F.2d at 164.

The court ruled that the confession was inadmissible even for impeachment purposes, and reversed because of the use of the confession. See also Ricks v. United States, *supra*,[4] Queen v. United States, *supra*.

Insofar as the admissibility of an uncounseled confession is concerned, the *Johnson and Stewart* case is indistinguishable from the instant case.[5] The majority argues that the instant case is distinguishable from *Queen* and *Johnson and Stewart* because preliminary hearings had been continued to allow the defendants to procure counsel in those cases.[6] Their incriminating statements

with the facts of *Johnson and Stewart*. The majority reads *Escobedo* "in light of its facts," especially the "exclusion of appellant's waiting lawyer * * *." The fact that a lawyer had not even been retained in *Johnson and Stewart* was not considered relevant. The majority states that there was "affirmative police action" in *Massiah* and *Escobedo*. But in *Johnson and Stewart* there was no affirmative action, other than the questioning by the police; and this is precisely the kind of action taken by the police in the instant case. (It is unclear why police questioning is not itself "affirmative police action.")

6. In distinguishing the *Ricks* decision the majority seems to attach some significance to the fact that the police quickly pursued the defendant from the hearing room to his cell. But the speed of pursuit factor has been recognized to be irrelevant in *Queen* (2-week lapse between original hearing and subsequent questioning) and in *Johnson and Stewart* (19-day lapse).

were made before they had obtained counsel, or at least, in the absence of counsel, after those defendants had expressed a desire to be represented by counsel at the preliminary hearing. In calling attention to this factual difference, the majority seems to focus on the fact that appellant had not requested a lawyer prior to his interview with the police. But the right to counsel does not depend on a request by the defendant.[7] I agree with the views expressed in Judge Fahy's dissent in Jackson v. United States, *supra*, 119 U.S.App.D.C. at 108, 337 F.2d at 144:

> "And it is of no significance that appellant had not requested counsel before making his confession. In Lee v. United States, 322 F.2d 770 (5th Cir. 1963), in which the use at trial of a confession obtained from the accused before he had had opportunity to consult with counsel was held violative of due process, the court stated: 'The record does not show whether Lee requested counsel or not at the time his interrogators appeared or before they opened his cell door. * * * "But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." Carnley v. Cochran, 1962, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70. Nor can there be a presumption of waiver of counsel.

Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 [146 A.L.R. 357],' 332 F.2d at 777.[3]"

"3. As one court has pointed out, a failure to request counsel has significance only if it amounts to a waiver of that right; but the courts will indulge every reasonable presumption against such a waiver and one will not be found unless it is made in clear and unequivocal terms by an accused fully aware of its consequences. Griffith v. Rhay, 282 F.2d 711, 717 (9th Cir. 1960), cert. denied, 364 U.S. 941, 81 S.Ct. 460, 5 L.Ed.2d 373 (1961).

" 'Further, the mere failure to request the presence of a retained or an appointed counsel should not be deemed an intelligent waiver, since a particular defendant who does not request aid probably has as much or more need of effective assistance than one who does so request.' Note, 61 COLUM.L.REV. 744, 748 (1961)."

The majority also argues that appellant cannot object to the admission of his confession since he sought out the interview with the police. However, the appellant's written request to see Captain Williams indicates that he sought the interview in order to discuss a newspaper article that had been published about him. The testimony of the policemen indicates that it was their confronting appellant with damaging evidence and questioning him which diverted the interview and elicited the admissions from appellant that he had taken the four automobiles. While the testimony of the officers could be read as indicating that the appellant took the initiative in suggesting a plea to a misdemeanor

7. In his concurring opinion in Williams v. United States, 120 U.S.App.D.C. 244, 345 F.2d 733 (filed April 1, 1965), Judge Burger does not list a request for counsel by the accused as one of the prerequisites to the operation of the *Escobedo* exclusionary rule. *Supra* at 245, 345 F.2d at 734. Contrast Jackson v. United States, *supra* at 104, 105, 337 F.2d at 140–141. See Justice White's dissent in *Escobedo*, 378 U.S. at 495, 84 S.Ct. 1758.

Appellant's failure to request counsel cannot be taken as a waiver of the right, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), especially since he had not been informed of his right to have counsel appointed. See

Blue v. United States, *supra; cf.* Greenwell v. United States, 119 U.S.App.D.C. 43, 47, 336 F.2d 962, 966 (1964); People v. Dorado, 42 Cal.Rptr. 169, 398 P.2d 361 (1965); State v. Dufour, 206 A.2d 82 (R.I.1965).

The fact that the preliminary hearings had not been completed in *Queen, Johnson and Stewart*, and *Ricks*, is of no significance. The records of the preliminary hearings in those cases indicate that the defendants had been informed of their rights to the same extent as had appellant herein. The fact that the preliminary hearing has been completed in the instant case could hardly divest the defendant of his right to counsel.

charge if the felony *charges* were dropped, it is hard to see how appellant could have made this proposal when there was only one charge against him at the time of the interview. In any case, it is clear that police questioning elicited the highly damaging specific confessions to the one offense then charged and the three offenses that were later charged.

The defendants in *Ricks, Johnson and Stewart* and *Queen* were not compelled to speak to the police; they freely consented to do so even though counsel was not present. Their free consent was not held to bar their objection to the use of their uncounseled confessions; and there is a strong indication that those defendants knew that they were consenting to interrogation by the police. Here there is no indication in the record that the defendant knew that his request for an interview and his consent thereto were an invitation to police questioning. In *Queen* and *Johnson and Stewart* the police testified that they warned the defendants that a statement could be used against them; in the instant case, the police testified that they did *not* warn appellant. Cf. People v. Stewart, 43 Cal. Rptr. 201, 400 P.2d 97 (1965); United States ex rel. Russo v. New Jersey, No. 14869, decided May 20, 1965, 351 F.2d 429 (3d Cir.).

In the light of the *Queen, Ricks, Johnson and Stewart, Escobedo,* and *Massiah* cases, the incriminating statements would have been inadmissible if they had been offered as part of the Government's case in chief.[8] And the Government conceded that the statements were not properly admitted for impeachment if they were not admissible as direct evidence. The denial of defense counsel's objection to their admission was error; the prejudicial impact of these statements, admitted without a cautionary instruction, cannot be doubted. Appellant's conviction should be reversed.

---

8. Government counsel at trial apparently had sufficient doubts about the admissibility of the confessions that they permitted two counts against appellant to be dropped rather than risk putting in appellant's statements in its case in chief.